IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LUCAS HORTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:22-cv-02474-B-BT |
| | § | |
| ADVANTAGE ONE BROKERS CORP., | § | |
| | § | |
| Defendant. | § | |

# **FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court in this *pro se* civil case is Plaintiff Lucas Horton's Motion for Default Judgment (ECF No. 12). The District Judge referred this matter to the United States Magistrate Judge for pretrial management pursuant to 28 U.S.C. § 636(b) and a standing order of reference. Order (ECF No. 6). For the reasons explained below, the District Court should DENY Horton's Motion for Default Judgment against Defendant Advantage One Brokers Corp.

## **Background**

This case arises from unwanted telephone calls that Plaintiff Lucas Horton allegedly received over the course of approximately eight months. Horton is a Texas resident who has had his cell phone registered on the National Do-Not-Call (DNC) registry since 2011. Compl. 2-3 (ECF No. 3). Despite this, he alleges that starting around March of 2022, he received unwanted solicitation calls from "bogus companies like the senior benefits center, insurance care center, or

1

American benefits." Compl. 6. After receiving these calls "for weeks" that he "didn't keep track of," Horton states that on March 23, 2022, he "attempt[ed] to find out who was behind the calls." Compl. 6. After answering one of the calls, he spoke with a broker for Defendant Advantage One Brokers Corp. (Advantage One), who offered him a quote for life insurance. Compl. 6. Horton warned the broker that his call was in violation of the Telephone Consumer Protection Act (TCPA) and ended the conversation. Compl. 6. Horton avers that he began to track the numbers and unwanted calls and maintains that he was called by various numbers on several dates, including:

- 234-239-2068 on 4/1/2022
- 863-803-5670 on 8/15/2022
- 469-831-4936 on 8/17/2022
- 254-258-7118 on 8/22/2022
- 469-467-2216 on 8/23/2022
- 214-272-5398 on 8/26/2022
- 214-269-3183 on 8/26/2022
- 214-225-9245 on 8/26/2022
- 469-399-6722 on 8/29/2022
- 214-699-6164 on 9/1/2022
- 214-901-7281 on 9/8/2022
- 214-901-7462 on 9/8/2022

2

- 214-901-7834 on 10/5/2022
- 979-317-6013 on 10/26/2022
- 214-901-7295 on 10/27/2022
- 214-901-7667 on 10/27/2022
- 214-433-2095 on 10/28/2022
- 214-901-7843 on 10/28/2022
- 254-263-4076 on 11/02/2022
- 214-901-7395 on 11/02/2022

Compl. 6. Horton avers that "[a]ll calls featured a beep, signifying an ATDS was used." Compl. 6.

In response to these persistent calls, Horton filed this suit claiming that, relating to the twenty received calls ranging from 4/1/2022 to 11/02/2022, Advantage One: (i) unlawfully used an automated telephone dialing system (ATDS) in violation of 47 U.S.C. § 227(b)(1)(A); (ii) continued to call his number registered on the DNC list in violation of 47 U.S.C. § 227(c)(3)(F); (iii) failed to maintain a written telemarketing policy in violation of 47 C.F.R. § 64.1200(d)(1); (iv) violated section 305.053 of the Texas Business & Commerce Code for its violations of the TCPA; (v) failed to identify themselves when calling Horton in violation of 47 C.F.R. § 64.1200(d)(4); (vi) failed to properly train telemarketing personnel in violation of 47 C.F.R. § 64.1200(d)(2); and (vii) engaged in telephone solicitations without a registered certificate in violation of section 302.101 of the Texas Business and Commerce Code. Compl. 9-11. He seeks $500 in TCPA

3

statutory damages per call, treble damages for willful conduct, statutory damages under Texas law for $5,000 per call, and costs. Compl. 12.

Horton filed his lawsuit on November 4, 2022, and later filed proof of service showing that a process server personally served the registered agent for Advantage One on November 11, 2022. Proof of Service (ECF No. 7). On January 3, 2023, Horton asked for an obtained a Clerk's entry of default (ECF. No. 11). The next day, Horton filed his motion for default judgment. Advantage One has not responded to the motion or otherwise appeared in this lawsuit.

## Legal Standard

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). When a default has been entered, the factual allegations of the complaint are taken as true. *U.S. For Use of M-CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (first citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2nd Cir. 1981); and then citing *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

Once default has been entered, the Court may enter a default judgment against the defaulting defendant upon motion of the plaintiff. Fed. R. Civ. P. 55(b)(2). Whether to enter default judgment is within the sound discretion of the court. *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) (citing *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977) ("[T]he entry of default judgment is committed to the discretion of the district judge.")). "[A] 'party is not entitled to a

default judgment as a matter of right, even where a defendant is technically in default.'" *Id.* (quoting *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996) (per curiam)); *accord Nat'l Cas. Co. v. KT2 LLC*, 2021 WL 1338221, at *2 (N.D. Tex. Apr. 8, 2021) (Brown, J.). Default judgments are "disfavored" and there is "a strong policy in favor of decisions on the merits and against resolution of cases through default judgments." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (internal citations and quotations omitted). To determine whether to enter default judgment, the Court conducts a two-part analysis.

First, the Court examines whether a default judgment is appropriate under the circumstances, considering: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) the harshness of the default judgment; and (6) whether the Court would feel obligated to set aside a default on the defendant's motion. *Lindsey*, 161 F.3d at 893 (citing 10 Charles Alan Wright et al., Federal Practice and Procedure § 2685 (2d ed. 1983)).

Second, the Court assesses the merits of a plaintiff's claims to determine whether a sufficient basis exists in the pleadings for the judgment. *See Nishimatsu Constr.*, 515 F.2d at 1206. Although a defendant may be in default, "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id*. However, "the requisite threshold for pleading sufficiency is lower on a motion for default judgment than on a motion to dismiss." *Edmond v. Marathon*

5

*Petroleum Co., LP*, 2021 WL 619503, at *7 (W.D. Tex. Feb. 17, 2021) (citing *Nishimatsu Constr.*, 515 F.2d at 1206).

## Analysis

The Court first examines the procedural propriety of Horton's Motion and then proceeds to address the merits of his claims to determine whether there is a sufficient basis for default judgment in the pleadings.

Many factors demonstrate that default judgment may be procedurally appropriate under the circumstances. There are no material facts at issue, because when a Defendant defaults, they admit to the plaintiff's well-pleaded allegations of fact. While the default is technical in nature, Horton is prejudiced and harmed by the continued delay in this case which has been pending since November 2022. The grounds for default are clearly established, and a default judgment would not be unduly harsh as Defendant has been given notice of the action and had sufficient time to respond. Horton has not himself caused the non-response or delay. *See Hunsinger v. 204S6TH LLC*, 2022 WL 1110354, at *3 (N.D. Tex. Mar. 23, 2022) (Ramirez, J.), *adopted by* 2022 WL 1102864 (N.D. Tex. Apr. 13, 2022).

However, reviewing the final factor and step two of the default-judgment analysis indicates that entry of default judgment would be improper in this case. Taking all of Horton's allegations as true still yields deficiencies in the substantive merits of his claims, and the Court would likely feel compelled to set aside a default judgment on the Defendant's motion. Horton fails to allege any basis to show that the twenty calls were made by Advantage One or one of its agents, and he fails to

6

allege any factual basis for many of his claims relating to the twenty complained-of calls.

"Theories of direct and vicarious liability are both cognizable under the TCPA." *Cunningham v. Politi*, 2019 WL 2519568, at *5 & n.11 (E.D. Tex. Apr. 30, 2019) (noting that the Supreme Court adopted an FCC ruling applying federal common law principles of agency to TCPA violations under a theory of vicarious liability). A plaintiff may use either theory to base a claim under § 227(b) or § 227(c). *See Cunningham v. Nationwide Sec. Sols., Inc.*, 2017 WL 10486988, at *2 (N.D. Tex. Nov. 2, 2017) (§ 227(b)); *204S6TH LLC*, 2022 WL 1110354, at *7 (§ 227(c)).

Under the TCPA, direct liability exists when an entity "initiates" a telephone call. *See In re Joint Petition filed by Dish Network, LLC*, 28 F.C.C. Rcd. at 6582 ¶ 24 (2013) ("[W]e clarify that a seller is not directly liable for a violation of the TCPA unless it initiates a call, but [the seller] may be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer."). "Initiating" a telephone call means that the entity "takes the steps necessary to physically place a telephone call." *Cunningham v. Lifestyles Dev., LLC*, 2019 WL 4282039, at *3 (E.D. Tex. Aug. 8, 2019).

An entity may also be vicariously liable for violations by third parties under the TCPA. "[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship . . . between the defendant and a third-party caller." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir.

7

2014), *aff'd*, 136 S. Ct. 664 (2016); *see Politi*, 2019 WL 2519568, at *6. An agency relationship exists where a principal "manifests assent to [an agent] . . . that the agent shall act on the principal's behalf and subject to the principal's control." *Lifestyles Dev., LLC*, 2019 WL 4282039, at *4 (quoting Restatement (Third) of Agency § 1.01 (Am. L. Inst. 2006)). "Agency is typically a factual issue, with the plaintiff at the pleading stage only required to allege a factual basis that gives rise to the inference of an agency relationship through the use of generalized as opposed to evidentiary facts." *Politi*, 2019 WL 2519568, at *6 (quoting *Mauer v. Am. Intercontinental Uni., Inc.*, 2016 WL 4651395, at *2 (N.D. Ill. Sept. 7, 2016)). "Three theories of agency could support a claim for vicarious liability: (1) actual authority; (2) apparent authority; and (3) ratification." *Lifestyles Dev., LLC*, 2019 WL 4282039, at *4.

Specifically, even applying the lower standard of review for default judgments, Horton fails to allege that Advantage One is responsible for any of the calls at issue—omissions that are fatal to Horton's claims of unlawful ATDS usage (Count I), unlawful calls to telephone numbers on the DNC list (Count II), and failure to identify (Count V). Indeed, Horton states that each call would have a person "saying they were calling from bogus companies like the senior benefits center, insurance care center, or American benefits," *not* Advantage One.[1] Compl.

---

[1] In another *pro se* TCPA case Horton is prosecuting in this District, he alleges another caller violated the statute using one of the phone numbers listed in his complaint. *Compare* Compl. 6 (noting a call from 469-399-6722 on 8/29/2022) *with* Amended Complaint at 7, *Horton v. Everything Breaks, Inc.*, No. 22-02131

6. He does not allege any basis for the Court to infer that these "bogus companies" are related to Advantage One, so as to demonstrate direct liability; nor does he provide any factual basis that the "bogus companies" had an agency relationship with Advantage One. In fact, he alleges almost nothing about the twenty calls other than general, conclusory statements that: "[a]ll of the calls at issue were made by, on behalf of, for the benefit of, with the knowledge and approval of the Defendant" and that "[a]ll calls featured a beep, signifying an ATDS was used." Compl. 6, 7. Moreover, he does not attempt to bring a claim for his 3/23 call with Advantage One's broker—the only call where Horton alleges any identifying information of the calling party. Compl. 6. Accordingly, he is not entitled to default judgment on Counts I, II, and V.

In addition, his claims for failure to maintain a telemarketing policy (Count III), failure to train on the telemarketing policy (Count VI), violations of Texas state law (Count IV), and unlawful engagement in telemarketing practices without a registration certificate (Count VII) also have no sufficient basis to grant default judgment. Critically, he solely requests "$1500 per call for Causes of Action 1-6 for the 20 calls received" and "$5000 per call for the 7th Cause of Action for the 20 calls received." Compl. 12. But Horton fails to allege any facts relating to those twenty telephone calls—he limits his factual allegations to a seemingly unrelated call with Advantage One. Indeed, his factual allegations regarding both his

---

(N.D. Tex. Nov. 10, 2022), ECF No. 17 (noting a call from 469-399-6722 on 8/29/2022).

requests for an internal DNC policy and his claim for failure to train personnel on DNC lists discuss only to the 3/23 call with Advantage One's broker, not any of the twenty purported unlawful telemarketing calls for which he seeks relief. Compl. 3. Further, he "tells" the Court the elements of section 302.101 of the Texas Business and Commerce Code but does not "explain" how this would allow the Court to conclude that any of the twenty other callers/entities—who have not been alleged to be affiliated with Advantage One—operates without a telemarketing registration certificate. Compl. 11; *see Callier v. Defendant Home Loans, Inc.*, 2022 WL 16858520, at *6 (W.D. Tex. Nov. 10, 2022) (citing Wagstaffe Group Practice Guide, *Fed. Civ. Proc. Before Trial* § 23-11 (2022)) (dismissing claims due to conclusory allegations). Therefore, Horton is not entitled to default judgment on Counts III, IV, VI, and VII.

## Recommendation

For the reasons stated, the Court should DENY Plaintiff Lucas Horton's Motion for Default Judgment.

**SO RECOMMENDED.**

June 5, 2023.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

  A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Svcs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).