IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LUCAS HORTON, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Case No. 3:22-cv-02474-B-BT |
| § | |
| ADVANTAGE ONE BROKERS CORP., § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Lucas Horton has filed a Motion for Default Judgment in this *pro se* civil action. Mot. (ECF No. 21). For the reasons explained below, the District Court should direct the Clerk to enter a default against Defendant Advantage One Broker's Corp and **GRANT** in part and **DENY** in part Horton's Motion for Default Judgment.

## Background

This case arises out of unwanted telephone calls that Horton allegedly received over the course of approximately eight months. *See* Am. Compl. (ECF No. 15). Horton contends that despite being on the national Do-Not-Call (DNC) list, he received numerous calls from various sham companies that he alleges are linked to Advantage One, in violation of the Telephone Consumer Protection Act (TCPA), the federal regulations in place to enforce the TCPA, and the TCPA's Texas state law analog. *See id.*

1

Horton filed this lawsuit on November 4, 2022. When Advantage One failed to answer or otherwise respond to his Original Complaint, Horton obtained an entry of default (ECF No. 11) and filed a Motion for Default Judgment (ECF No. 12), which the Court denied. FCR (ECF No. 13); Order Accepting (ECF No. 17). The Court assessed Horton's claims and determined that the factual allegations in the Original Complaint failed to provide a sufficient basis on which to enter a default judgment. *See* FCR. Specifically, the Court found that, even applying the lower standard of review for default judgments, Horton failed to allege facts indicating that Advantage One was responsible for any of the calls at issue, whether directly or vicariously. *Id.* at 8. The Court allowed Horton to file an Amended Complaint, which he did on June 14, 2023. Am. Compl. And, thereafter, Horton served the Amended Complaint on Advantage One's registered agent, Jaspreet Singh, at Singh's home address in California. *See* Not. Service (ECF No. 19).

After filing and serving his Amended Complaint, Horton renewed his request for default judgment by filing a second Motion for Default Judgment. Mot. However, Horton did not first obtain the Clerk's entry of default as to the Amended Complaint, and the Court ordered him to do so by September 15, 2023, or risk dismissal for failure to comply with Rule 55. Order (ECF No. 22). In response to that order, Horton filed a third "Motion for Default Judgment" on September 7, *see* Third Mot. (ECF No. 23), and then a fourth "Motion for Default Judgment" on September 29, *see* Req. Default (ECF No. 24). Although styled as an additional "Motions for Default Judgment," the third and fourth Motions clearly and

2

unequivocally ask the Clerk to enter a default. *See* Third Mot. 2; Req. for Default 2. To date, the Clerk has declined to issue a default.

## Legal Standard

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). When a default has been entered, the factual allegations of the complaint are taken as true. *U.S. For Use of M-Co Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2nd Cir. 1981); *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

Once default has been entered, the Court may enter a default judgment against the defaulting defendant upon motion of the plaintiff. Fed. R. Civ. P. 55(b)(2). Whether to enter default judgment is within the sound discretion of the court. *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) (citing *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977) ("[T]he entry of default judgment is committed to the discretion of the district judge.")). "[A] 'party is not entitled to a default judgment as a matter of right, even where a defendant is technically in default.'" *Id.* (quoting *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996) (per curiam)); *accord Nat'l Cas. Co. v. KT2 LLC*, 2021 WL 1338221, at *2 (N.D. Tex. Apr. 8, 2021). To determine whether to enter default judgment, the Court conducts a two-part analysis.

First, the Court examines whether a default judgment is appropriate under the circumstances, considering: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) the harshness of the default judgment; and (6) whether the Court would feel obligated to set aside a default on the defendant's motion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (citing 10 Charles Alan Wright et al., *Federal Practice and Procedure* § 2685 (2d ed. 1983)).

Second, the Court assesses the merits of a plaintiff's claims to determine whether a sufficient basis exists in the pleadings for the judgment. *See Nishimatsu Constr.*, 515 F.2d at 1206. Although a defendant may be in default, "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.* However, "the requisite threshold for pleading sufficiency is lower on a motion for default judgment than on a motion to dismiss." *Edmond v. Marathon Petroleum Co., LP*, 2021 WL 619503, at *7 (W.D. Tex. Feb. 17, 2021) (citing *Nishimatsu Constr.*, 515 F.2d at 1206).

## Analysis

The Court first examines the procedural propriety of Horton's Motion for Default Judgment, *see* Mot., and then proceeds to examine the pleadings to determine whether there is a sufficient basis for entry of a default judgment. Although Horton's Motion for Default Judgment is procedurally deficient, the

Court can correct that deficiency. The Motion is otherwise substantively sufficient to grant a default judgment as to some of Horton's claims.

    A. <u>Default judgment is appropriate under the circumstances.</u>

The Court will first evaluate whether default judgment is appropriate under the circumstances. While most of the *Lindsay* factors lean in Horton's favor, the Court must evaluate whether the procedural deficiencies in Horton's Motion counsel against granting a default judgment. As the Amended Complaint is now the operative pleading on which Horton seeks default judgment, he was required to obtain from the Clerk an entry of default specific to Advantage One's failure to respond to the Amended Complaint before moving for a default judgment. *See Longwell v. Wynd Travel Choice Global, Inc.*, 2022 WL 214470, *2 (W.D. Tex. Jan. 25, 2022); *U.S. Bank Nat. Assoc. as Trustee for Truman 2016 SC6 Title Trust v. Harris*, 2017 WL 10776031, *1 (E.D. Tex. Sept. 29, 2017). However, Horton filed his second Motion for Default Judgment, *see* Mot., shortly after properly serving his Amended Complaint, without first obtaining the entry of default from the Clerk. In response to direction from the Court to request an entry of default or risk dismissal, Horton attempted to obtain an entry of default from the Clerk within the allotted time, but he styled his request as an additional "Motion for Default Judgment." *See* Third Mot. Then, after the deadline, Horton filed another request for an entry of default, again styled "Motion for Default Judgment." *See* Req. for Default. To date, the Clerk has declined to enter a default.

The Federal Rules are clear that an entry of default must precede a default judgment—without an entry of default, the Court cannot grant a motion for default judgment. Fed. R. Civ. P. 55; *Burton v. Madix Store Fixtures*, 2006 WL 3247329, at *2 (N.D. Tex. Nov. 9, 2006) (Lindsay, J). However, as the requirements for an entry of default are satisfied here, the Court should direct the Clerk to construe Horton's second and third "Motions" as proper requests for entry of default and to enter a default under Rule 55(a). Rule 55(a) states that when a party has failed to plead or otherwise defend against a complaint, and that failure is shown by affidavit or otherwise, the clerk *must* enter a default. Fed. R. Civ. P. 55(a) (emphasis added). Horton, proceeding *pro se*, has attempted to comply with the Federal Rules and the Court's directives, and the conditions for the clerk's entry of default are satisfied: Advantage One is indeed in default, despite proper service of the Amended Complaint, and Horton has shown this default "by affidavit or otherwise." Horton's status as a *pro se* litigant and his apparent failure to understand the import of the style of his submissions should not prevent him from obtaining relief he is otherwise entitled to receive.

Horton properly effectuated service of the Amended Complaint on Advantage One's registered agent, Jaspreet Singh, on July 25, 2023. *See* Proof Service Ex. 1 (ECF No. 7-1) (listing the name and address of Advantage One's registered agent); *Henderson v. Republic of Texas*, 672 Fed. App'x 383, 385 (5th Cir. 2016) (under Texas law, a corporation may be served through its registered agent). Horton appended an affidavit to his third Motion for Default Judgment,

6

showing that Advantage One was properly served through Singh. *See* Third Mot. at Ex. 3 (ECF No. 23-3). Horton states in his Motion that "as of the date of this filing, more than 21 days have passed since serving the Summons and Complaint upon the Defendant and the Defendants has [sic] failed to file a responsive pleading." *Id*. at 2. Horton has thus shown that Advantage One is in default. Fed. R. Civ. P. R. 12(a); Fed. R. Civ. P. 55(a); *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) (stating that a default occurs when a defendant has failed to plead or otherwise respond within the allotted time).

Because Horton has shown "by affidavit or otherwise" that Advantage One has failed to respond to his lawsuit within the required time, the Court should direct the Clerk to enter a default. *Jefferson v. Louisiana Dept. of Public Safety and Corrections*, 401 F. App'x 927, 929 (5th Cir. 2010) ("If the plaintiff files a sufficient application for entry of default, the clerk *must* enter the party's default") (emphasis in original) (cleaned up).

B. <u>There is sufficient basis in the Amended Complaint to grant default judgment on Causes of Action I, II, IV, and V.</u>

Next, the Court examines whether Horton's Amended Complaint cures the substantive deficiencies that caused the Court to deny his first motion for default judgment. *See generally* FCR. In its prior opinion, the Court highlighted Horton's failure to allege facts showing that Advantage One was responsible for any of the calls at issue, or that Advantage One should be held vicariously liable for calls made by a third party, as required to state a claim under the TCPA. *See id*. at 7–8. The

7

Court also found that Horton's Original Complaint wholly lacked factual allegations in relation to his claims for failure to maintain a telemarketing policy (Cause III), failure to train on a telemarketing policy (Cause VI), and unlawful engagement with telemarketing practices without a registration certificate (Cause VII). *See id.* at 9–10. However, for the reasons stated below, the Court should find that there is a sufficient basis in Horton's Amended Complaint to grant default judgment as to some of his claims (Causes I, II, IV, and V).

Section 227(b) of the TCPA makes it unlawful for any person to make a call to a cell phone using any automatic telephone dialing system or an artificial or prerecorded voice without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii), (B). Section 227(c)(3) allows for the creation of a national "Do Not Call" database and prohibits telemarketing calls to numbers in that database. 47 U.S.C. § 227(c)(3)(F). And 47 F.C.R. § 64.1200(d)(4), part of the federal regulations in place to enforce the TCPA, requires that a telemarketing caller provide identifying information when initiating the call. Texas state law provides a cause of action for communications that violate 47 U.S.C. § 227. Tex. Bus. & Com. Code § 305.053.

To support a TCPA claim, a plaintiff can allege either direct liability by showing that the defendant initiated the offending telemarketing calls, or vicarious liability by showing that an entity in an agency relationship with the defendant initiated the calls. *See Cunningham v. Lifestyles Dev., LLC*, 2019 WL 4282039, at *3–4 (E.D. Tex. Aug. 8, 2019). A plaintiff can establish vicarious liability in this

8

context by common law agency principles. *In re Joint Petition filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6582 at ¶ 24 (2013). An agency relationship exists where a principal "manifests assent to [an agent] . . . that the agent shall act on the principal's behalf and subject to the principal's control." *Cunningham*, 2019 WL 4282039, at *4. Agency is typically a factual issue, with the plaintiff at the pleading stage only required to allege a factual basis that gives rise to the inference of an agency relationship using generalized as opposed to evidentiary facts. *Cunningham v. Politi*, 2019 WL 2519568, at *6 (E.D. Tex. April 30, 2019).

Horton's Amended Complaint includes allegations that are—judged against the lower standard applicable to default judgments—sufficient to give rise to an inference that the "bogus companies" that were calling him were in an agency relationship with Advantage One, and that their calls violated the TCPA. *See* Am. Compl. 8. According to Horton, he has been on the national DNC list since 2011. *Id.* at 4. Beginning in late February 2022 and continuing through early November 2022, Horton received 26 calls from "bogus companies" using "spoofed numbers" and "generic names," such as Senior Benefits Center, Insurance Care Center, and American Benefits. *Id.* at 7–8. All the callers used the same "call script." *Id.* Specifically, they all offered to provide term life insurance benefits that "fully covered all burial expenses." *Id.* Horton alleges that "all callers" used an auto-dialing system, signified by a long beep before the speaker came on the line. *Id.* He further alleges that the "bogus companies" use the "spoofed numbers" and "generic names" to hide Advantage One's identity. *Id.* at 8. And he claims that the "generic

9

names" appear in redacted form on the Better Business Bureau web page for Advantage One Broker's Corp. *Id.* He appends an image of that web page to the Amended Complaint, which shows one anonymous complaint from October 2021 averring that "[redacted name] participates in illegal telemarketing." *Id.* at Ex. C (ECF No. 15-4).

Horton then alleges that he answered a call on March 26 to "[go] through the quote process" in an attempt to find out who was behind the calls, and eventually was transferred to and received a quote from Lawrence Wint, "a broker employed by the Defendant." *Id.* at 9; *id.* at Ex. D (ECF No. 15-7). He also states that he sent an email to Wint "warning about the illegal calls" and attaches a copy of his email to the Amended Complaint. *Id.* at Ex. E (ECF No. 15-8). Horton's email advises Wint:

> I only talked to you and got an email to get your info because I sue robocallers. But I only want to sue big companies that do this and not contractors like you who don't know any better. So I just want to warn you that the company that called and transferred me to you used an autodialer. Also, I have been on the DNC list since 2011. So they are breaking both of the big rules of the TCPA. . . . And being in Texas, there is an additional penalty for the caller (or you) not having a required telemarketing license even though you did not make the call. That is 5k a call. So, you are looking at 8k per call in Texas and 3k per call anywhere else. This is the 3rd call I had from these guys and you would have been on the hook for 24K to me if I was more ruthless in this. The caller did gave me some kind of verbal waiver about the TCPA. But that doesn't count after the fact and they have to obtain written consent anyways. So my advice is to change lead companies or tell them you want them to adhere to the TCPA rules.

*See id.* at Ex. E.

Horton further states that, when the calls did not stop, he picked up a call on November 2 "to see if it was still the Defendant calling him." *Id*. at 9. But after Horton answered a few of the caller's questions, "the caller told [Horton] his phone number was not to be called and hung up[.]" *Id.* Horton contends that these facts show that Advantage One placed his number on "some sort of internal DNC list after he warned Lawrence Wint" and that there is an agency relationship between the callers and Advantage One, or that they are the same entity. *Id.*

In sum, Horton has alleged facts sufficient to demonstrate that the March 26 call was transferred to a broker from Advantage One, and that after Horton warned the broker of a potential TCPA violation, a caller on November 2 told Horton that his number was not to be called. He has shown that he received these telemarketing calls despite being on the DNC list, and that the callers did not provide accurate identifying information as required by the TCPA. With these allegations, Horton has pleaded sufficient facts to give rise to an inference of an agency relationship between Advantage One and the March 26 and November 2 callers. *See id*. at 8–9. Further, given that Horton has alleged specific and substantial similarities among the 26 calls listed in his Amended Complaint, he has pleaded sufficient facts to give rise to an inference that all 26 calls came from Advantage One or an agent of Advantage One. *See id*. at 7–8. Because "the requisite threshold for pleading sufficiency is lower on a motion for default judgment than on a motion to dismiss," *Edmond*, 2021 WL 619503, at *7, and a plaintiff may survive a motion to dismiss merely by pleading factual content that allows the court

to draw a reasonable inference that the defendant is liable for the misconduct alleged, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555), the Court should find that Horton's Amended Complaint is sufficient to show that Advantage One vicariously violated the TCPA (Causes I, II, IV, and V).

As for Horton's other claims (Causes III, VI, and VII), however, the deficient allegations in the Amended Complaint remain substantially the same as in his Original Complaint. Beyond the same conclusory statements, Horton has not added any facts to support his claims that Advantage One failed to maintain a copy of the DNC policy, failed to train its employees on those policies, or operated without a business certificate. *See generally* Am. Compl. Without more, the Court should again find that Horton is not entitled to default judgment on these claims. *See* FCR; *see also Edmond*, 2021 WL 619503, at *7 (holding that plaintiff's factual allegations failed to provide the requisite basis sufficient for default judgment).

C. <u>Horton is entitled to statutory damages for Advantage One's TCPA violations.</u>

Because Horton has provided a sufficient basis in his Amended Complaint for a default judgment on his claims related to the phone calls listed in his Amended Complaint, the Court should next determine whether a specific amount of damages can be calculated by reference to the information in the pleadings. *Cunningham v. TechStorm, LLC*, 2018 WL 3118400, *5 (N.D. Tex. May 29, 2018). Under the TCPA, a plaintiff is generally entitled to recover $500 in damages per unlawful call. *See* 47 U.S.C. § 227(b)(3)(B); *Arredondo v. Flexi Corp.*, 2017 WL

12

7796192, *1 (S.D. Tex. Aug. 18, 2017). Treble damages are available if the court determines that the defendant willfully and knowingly committed the violation. 47 U.S.C. § 227(b)(3). A violation is "willful or knowing" in this context when a defendant had reason to know, or should have known, that the call would violate the TCPA. *Adamcik v. Credit Control Servs., Inc.*, 832 F.Supp.2d 744, 754 (W.D. Tex. 2011).

Here, Horton seeks a treble damages award of $1,500 for each of the 26 calls he lists in his Amended Complaint. *See* Am. Compl. 15. As discussed above, the Court should conclude that Horton has sufficiently pleaded TCPA violations for each of these calls. As for whether Horton is entitled to treble damages for Advantage One's knowing or willful violation, the Court should find that, for the 21 calls after March 26, Horton has shown sufficient facts alleging that Advantage One or its agent knew or should have known that calling Horton was a TCPA violation. Horton alleges that after warning Advantage One's broker that he was on the DNC list, he received 21 additional calls. On November 2, the date the calls stopped, the caller realized while speaking to Horton that his number should not have been called. *See id.* at 9. There is therefore a sufficient basis in the pleadings at this default judgment stage that Advantage One or its agent committed the 21 TCPA violations after March 26 knowingly or willfully, entitling Horton to treble damages for those calls. *See Cunningham*, 2018 WL 3118400, at *6. In total, the Court should find that Horton is entitled to $34,000 in statutory damages—$500

each for the five calls prior to and including the March 26 call, and $1,500 each for the 21 calls thereafter.

## Recommendation

The Court should direct the clerk to enter a default against Advantage One and **GRANT** Horton's Motion for Default Judgment as to Causes I, II, IV, and V. The Court should enter a judgment for a total of $34,000 in damages, representing five TCPA violations entitling Horton to $2,500 in statutory damages, and 21 knowing and willful TCPA violations entitling Horton to treble damages of $31,500. As to Causes III, VI, and VII, the Court should **DENY** Horton's Motion for Default Judgment.

**SO RECOMMENDED.**

January 4, 2024.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## **INSTRUCTIONS FOR SERVICE AND**
## **NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Svcs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).